a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| SANTOS DARDAR #490648,<br>Plaintiff | CIVIL DOCKET NO. 1:21-CV-02284<br>SEC P |
| VERSUS | JUDGE DAVID C. JOSEPH |
| JAMES LEBLANC ET AL,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a civil rights Complaint (ECF No. 1) filed under 42 U.S.C. § 1983 (ECF No. 1) by *pro se* Plaintiff Santos Dardar ("Dardar"). Dardar is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Raymond Laborde Correctional Center ("RLCC") in Cottonport, Louisiana. Dardar is one of several RLCC inmates to file a Complaint alleging constitutional violations arising from exposure to environmental tobacco smoke ("ETS")[1]. Dardar seeks monetary damages, declaratory relief, and injunctive relief.

Because Dardar cannot obtain a release from custody through a § 1983 Complaint; cannot obtain monetary damages against Defendants in their official

---

[1] In addition to a number of recent Complaints, inmates have been filing lawsuits for several years complaining about ETS at RLCC. *See Gipson v. LeBlanc*, 2019 WL 4803683, at *1, n.2 (W.D. La. 2019).

1

capacities; and fails to state a claim for which relief can be granted against Secretary LeBlanc, those claims should be DENIED and DISMISSED.

I.  Background

Dardar is assigned to the Cajun-3 housing unit on the C-2 tier. ECF No. 1 at 9. Dardar alleges that inmates place open cans of smokeless tobacco in the two microwaves on the tier, which "gives a very bad odor" that is circulated by the tier's ceiling fans. ECF No. 1 at 9-10. Dardar alleges that the windows of the tier cannot be opened to ventilate the area. *Id.* at 11.

According to Dardar, after drying out the tobacco in the microwaves, inmates take a piece of paper from the menu posted in the TV room and scratch the paper with pencils until it turns black. ECF No. 1 at 10. Then, they mold the blackened paper onto the pencil's eraser, making a "tiny balloon." They heat the blackened paper "balloon" in the microwave until it lights. ECF No. 1 at 11. Inmates use this as a match to light cigarettes made from Bible pages. *Id.*

Dardar alleges that the noxious odor causes him to experience burning of his eyes and nose, migraine headaches, nausea, and chest pains, necessitating multiple sick calls. ECF No. 1 at 8. Dardar has discussed the issue with Nurse Flurey, and she advised that ETS is having an adverse effect on Dardar's health. ECF No. 1 at 12. Ms. Flurey indicated that tobacco products should not be sold because they are harming the inmates and officers through the improper use. ECF NO. 1 at 8. Mrs. Flurey also acknowledged that numerous inmates have complained about the smoke at sick call. *Id.*

Dardar alleges that Defendants are aware that inmates are smoking and that correctional officers are not stopping the inmates from lighting paper, drying tobacco in the microwaves, or smoking the homemade cigarettes. ECF No. 1 at 12. Dardar states that he filed grievances at each step of the administrative remedy process. Dardar seeks monetary damages, injunctive relief, and a release from prison.

II.   Law and Analysis

   A.   Dardar fails to state a claim for monetary damages against Defendants in their official capacities.

A suit against an official in his official capacity is actually a suit against the state. *Hafer v. Melo*, 502 U.S. 21 (1991); *Sanders v. English*, 950 F.2d 1152, 1158 (5th Cir. 1992). The Eleventh Amendment bars a suit against a state or a state official unless the State has waived its immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65–66 (1989). The state of Louisiana has statutorily refused any waiver of Eleventh Amendment sovereign immunity in federal court. *Id.*; La. Rev. Stat. Ann. § 13:5106(A).

An exception to this general principle was created in *Ex parte Young*, where the United States Supreme Court held that a suit for prospective injunctive relief, challenging the constitutionality of a state official's action in enforcing state law, is not one against the State. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *see Edelman v. Jordan*, 415 U.S. 651 (1974) (the Eleventh Amendment grants the states an immunity from retroactive monetary relief, but state officers are not immune from prospective injunctive relief). Thus, Dardar's claim for monetary damages from

3

Defendants in their official capacities is barred by the Eleventh Amendment. *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004).

### B. Dardar fails to state a claim against Secretary LeBlanc in his individual capacity.

The Supreme Court has articulated a two-prong test for determining whether ETS exposure violates a prisoner's Eighth Amendment right: "First, the prisoner must show [objectively] that he is being exposed to unreasonably high levels of environmental tobacco smoke," and second, "the prisoner must show [subjectively] that prison authorities demonstrated a deliberate indifference to his plight." *Davis v. McCain*, No. 16-cv-1534, 2019 WL 8273960, at *1 (W.D. La. Dec. 11, 2019) (citing *Helling v. McKinney*, 113 S. Ct. 2475, 2482 (1993)).

As for the first prong, this Court has taken judicial notice of the Surgeon General's 2006 report on health consequences related to exposure to ETS. *See Davis*, 2019 WL 8273960, at *4; *Samuels v. Arnold*, No. 11-cv-0201, 2014 WL 1340064, at *3 (W.D. La. Apr. 1, 2014). There is no risk-free level of exposure to secondhand smoke; breathing even a little can be harmful to health. *Davis*, 2019 WL 8273960, at *4; *Samuels*, 2014 WL 1340064, at *3.

The United States Court of Appeals for the Fifth Circuit noted that "sporadic and fleeting exposure" is not "unreasonably high" for the purposes of *Helling*. *Davis*, 2019 WL 8273960, at *4 (citing *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001)). The Fifth Circuit has also recognized that a prisoner sufficiently states an Eighth Amendment claim if they have been exposed to ETS for a "sustained time, even if the ETS had not already harmed his health." *Wesley v. LeBlanc*, No. 1:20-

CV-00243, 2021 WL 1219982, at *4 (W.D. La. Mar. 15, 2021) (citing *Murrell v. Chandler*, 109 F. App'x 700, 701 (5th Cir. 2004); *Rochon v. City of Angola*, 122 F.3d 319, 320 (5th Cir. 1997)). This Court has drawn a distinction between "intermittent exposure to smoke during bus rides" as "sporadic and fleeting" and "situations [where] the plaintiff was forced to share living quarters with smokers . . . " as "unreasonably high." *Brooks v. Menifee*, No. 1:07–cv–00131, 2010 WL 774079, at *3 (W.D. La. March 4, 2010); *see also Murrell v. Casterline*, 307 F. App'x 778, 780 (5th Cir. 2008).

Regarding the second prong, "deliberate indifference" exists when the prison official knows that inmates are at risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Davis*, 2019 WL 8273960, at *4 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). In deciding whether a plaintiff has demonstrated deliberate indifference, a court considers: existence of a no-smoking policy, enforcement of the policy when violations are observed, direct complaints to prison officials, extent of bodily injury, and pervasiveness of smoking within indoor spaces. *See Davis*, 2019 WL 8273960, at *3-4; *Gipson*, 2018 WL 1973225, at *2-3; *Samuels*, 2014 WL 1340064, at *4-5.

Dardar fails to establish that Secretary LeBlanc is personally liable on the face of the Complaint. ECF No. 1. As this Court previously stated in *Gipson v. McCain*:

> Secretary LeBlanc does not supervise or control the day-to-day operations and employees of RLCC. Gipson has not claimed personal involvement by Secretary LeBlanc in the alleged failure of RLCC to enforce the no—smoking policy at RLCC, nor has he alleged the implementation of an unconstitutional policy by Secretary LeBlanc.

5

*Gipson*, 2018 WL 1973225, at *2. Although Dardar named Secretary LeBlanc in his Complaint, the alleged facts do not mention any personal action or inaction taken by LeBlanc. ECF No. 1. In fact, Dardar complains that Warden Meyers failed to speak with Secretary LeBlanc about the ongoing problem of ETS at RLCC. ECF No. 1 at 12. Nor does Dardar allege an unconstitutional policy implemented by LeBlanc. Liberally construed, Dardar has not sufficiently stated a claim against Secretary LeBlanc in his personal capacity.

      C.    <u>Dardar cannot obtain release from custody through this Complaint.</u>

A prisoner's release cannot be obtained through a civil rights action and must be requested through a petition for writ of habeas corpus. *See Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997) ("§ 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures," while "[a] habeas petition . . . is the proper vehicle to seek release from custody"); *Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994). Therefore, Dardar's request to be released is meritless.

### III.   <u>Conclusion</u>

Because Defendants are immune from monetary damages in their official capacities, and because Dardar fails to state a claim against Secretary LeBlanc in his individual capacity, IT IS RECOMMENDED that Dardar's claim for monetary damages against Warden Meyers in his official capacity only be DENIED and DISMISSED WITH PREJUDICE, and that all claims against Secretary LeBlanc be DENIED and DISMISSED WITH PREJUDICE. IT IS FURTHER RECOMMENDED

that Dardar's request for release be DISMISSED WITHOUT PREJUDICE because such relief cannot be obtained through a § 1983 Complaint. The remaining claims against Warden Meyer will be SERVED pursuant to a separate Order.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Wednesday, September 1, 2021.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE