b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| SANTOS DARDAR, Plaintiff | CIVIL DOCKET NO. 1:21-CV-02284 |
| VERSUS | JUDGE JOSEPH |
| JAMES LEBLANC, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Defendant Marcus Meyers ("Meyers"), the Warden of the Raymond Laborde Correctional Center ("RLCC") in Cottonport, Louisiana, filed a Motion for Summary Judgment. ECF No. 26. Because the evidence shows that Defendant has not been deliberately indifferent to the serious risk of harm to Dardar's health from second-hand smoke, his Motion for Summary Judgment (ECF No. 26) should be GRANTED.

I. Background

Plaintiff Santos Dardar ("Dardar") filed a Complaint pursuant to 42 U.S.C. § 1983. Dardar, an inmate at RLCC, contends he is suffering from medical problems due to his exposure to environmental tobacco smoke ("ETS") caused by the misuse of smokeless tobacco in the prison. The sole remaining Defendant is Warden Myers. Dardar seeks damages and injunctive relief. Dardar is currently incarcerated in the State Police Barracks in Zachary, Louisiana. ECF No. 28.

Myers filed a Motion for Summary Judgment with a statement of material facts, an affidavit, and documentary evidence attached. ECF No. 26. Dardar opposes that motion. ECF No. 30.

II.  Law and Analysis

    A.  The Supreme Court's test to determine whether an inmate is entitled to relief for exposure to ETS in prison.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" on convicted inmates during imprisonment. The Eighth Amendment encompasses a right to "reasonable safety," including protection against unsafe conditions that pose "an unreasonable risk of serious damage to [the inmate's] future health." *See Helling v. McKinney,* 509 U.S. 25, 33, 35 (1993); *see also Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016), cert. den., 137 S. Ct. 489 (U.S. 2016). A prison official's duty to protect against such unsafe conditions arises where the inmate has been placed "under a regime that incapacitates [him] to exercise ordinary responsibility for his own welfare." *County of Sacramento v. Lewis,* 523 U.S. 833, 851 (1998); *see also Legate*, 822 F.3d at 210.

In *Helling,* 509 U.S. at 34, the Supreme Court held the Eighth Amendment protects against imminent dangers as well as current unnecessary and wanton infliction of pain and suffering. *See also Legate*, 822 F.3d at, 210. Prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to ETS. *See Helling,* 509 U.S. at 33-35.

2

"[A]n Eighth Amendment claim requires proof of (1) an objective exposure to a substantial risk of harm and (2) deliberate indifference of a prison official where (A) the official had subjective knowledge that the inmate faced a substantial risk of harm and (B) disregarded the risk." *Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir.2021); *see also Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994). For the objective component of the burden of proof, a plaintiff must show that he is being exposed to unreasonably high levels of ETS. The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS,[1] but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *See Hicks v. Correctional Corp. of America*, 2009 WL 2969768, at *5 (W.D. La. 2009). Deliberate indifference requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Valentine*, 993 F.3d at 281.

---

[1] It is well-established that ETS is dangerous. Courts in this district have given judicial notice to the Surgeon General's 2006 report, "The Health Consequences of Involuntary Exposure to Tobacco Smoke," that concludes the there is no risk-free level of exposure to ETS. *See Davis v. McCain*, 2018 WL 4936566, at *4 (W.D. La. 2018) (R&R), report and recommendation adopted, 2018 WL 4925676 (W.D. La. 2018); *Tilmon v. Keith*, 2016 WL 6662470, *1 (W.D. La. 2016); *Samuels v. Terrell*, 2015 WL 4092868, *5 (W.D. La. 2015); *Samuels v. Arnold*, 2014 WL 1340064, *3 (W.D. La. 2014); *Williams v. Johnson*, 2014 WL 2155211, *4 (W.D. La. 2016).

## B. Defendants were not deliberately indifferent to the serious risk of future harm to Dardar from exposure to second-hand smoke.

In his statement of material facts and affidavit, Warden Myers shows that Dardar has been incarcerated at RLCC since 2016. ECF No. 26-1 at 1; No. 26-3 at 3. Warden Myers was the warden of RLCC in 2021. ECF No. 26-1 at 2. Warden Myers shows that Dardar filed his first ARP (grievance) complaining about second-hand smoke in February 2021, and made his first sick call complaining about the effects of second-hand smoke (burning eyes and chest pain) in March 2021. ECF No. 26-1 at 1; No. 26-4 at 2-8, 12-13.

Warden Myers also shows that he ordered and authorized publication, dissemination, and posting of the smoking ban policies among the inmates and employees at RLCC. ECF No. 26-1 at 2; No. 26-5 at 1. Warden Myers also authorized and implemented placement of "no smoking" signs throughout the prison. ECF No. 26-1 at 2; No. 26-5 at 2. The policies and related penalties for violations are posted in the administrative areas, dormitories, tiers, and day rooms. ECF No. 26-1 at 2. When inmates violate the smoking ban in a TV room, that TV room is closed. ECF No. 26-1 at 2; 26-5 at 2; 26-9. When inmates dry tobacco in the microwaves, the microwaves are removed from the dormitories. ECF No. 26-1 at 2; No. 26-5 at 2.

Warden Myers authorized the penalties for smoking ban violations and enforcement of those penalties through issuance of disciplinary reports to all offenders caught violating the ban. ECF No. 26-1 at 2-3; No. 26-5 at 2. Offenders

4

subject to disciplinary procedures may lose phone privileges, canteen privileges, and yard privileges, and may be placed in administrative segregation. ECF No. 26-1 at 3; No. 26-5 at 2. Myers shows that over 800 disciplinary reports have been issued to offenders for smoking ban violations since 2017.[2] ECF No. 26-1 at 3; No. 26-5 at 2; Nos. 26-11 to 16.

Warden Myers also shows that smoking cessation literature is available to all offenders.[3] A smoking cessation program was also offered to offenders beginning in 2015, but was discontinued due to lack of interest. ECF No. 26-1 at 2; No. 26-5 at 2.

Warden Myers works closely with Louisiana Department of Corrections Secretary James Leblanc in his efforts to enforce the smoking ban. They continually review and enforce the policy at RLCC. ECF No. 26-1 at 3; No. 26-5 at 3.

Warden Myers attached to his Motion: (1) copies of the RLCC smoking policies (ECF No. 26-6, No. 26-7; No. 26-8; No. 26-10); (2) pictures of the smoking policies and "no smoking" signs posted in RLCC (ECF No. 26-10); and (3) over 800 disciplinary reports issued at RLCC for violations of the smoking ban from January 2017 through August 2022 (ECF Nos. 26-11 to 16).

---

[2] The Disciplinary Reports issued prior to 2017 were destroyed in compliance with RLCC's document retention policy. ECF No. 26-5 at 2.

[3] Dardar contends that smoking cessation literature has never been posted for the inmates. Warden Myers does not state that the literature is posted, but that it is available (apparently upon request).

5

Dardar concedes the assertions in Defendant's statement of material facts. ECF No. 30. But Dardar contends the punishments of closing the TV room and removing the microwaves are rarely implemented. ECF No. 30. Dardar's assertion that the majority of smoking infractions take place in other areas (ECF No. 30) explains why it may not be necessary to close the TV room often. Likewise, Dardar's statement that inmates have found alternative ways to dry smokeless tobacco (by steaming or sun-drying) explains why the microwaves are used less often, so it is not often necessary to remove the microwaves. The resourcefulness of the inmates indicates the effectiveness of the measures implemented to stop them from using the microwaves to dry tobacco. It in no way indicates that Defendant has been deliberately indifferent to the problem.

Defendant makes clear in his affidavit and statement of material facts that he is working closely with Secretary Leblanc regarding efforts to enforce the smoking ban at RLCC and that the policies are continuously reviewed. Defendant shows that the steps taken to enforce the ban have been continuous, incremental, and progressive, and the results are monitored.

Dardar further asserts that the prison staff is only "half-heartedly" enforcing the smoking ban, and that "thousands" of smoking violations in the dorms have gone unpunished. The policy of punishing every individual caught violating the smoking ban, and the hundreds of disciplinary reports submitted by Defendant, show the ban is being enforced more than "half-heartedly." Moreover, Dardar does not contend that

6

Warden Myers was aware of and deliberately ignored "thousands" of instances of violations. The disciplinary reports show that Defendant is aware of the smoking problem at RLCC, and has made significant and continuous efforts to enforce the smoking ban.

Finally, Dardar argues that Defendant's failure to remove smokeless tobacco from the RLCC canteen indicates his indifference to the negative effects of ETS on Dardar's health. However, smokeless tobacco, used properly, does not create ETS and does not negatively impact the health of anyone other than the person using it. The sale of smokeless tobacco for proper use does not indicate that Defendant is deliberately indifferent to the serious risks caused by ETS to Dardar's health.

In sum, Defendant has offered uncontroverted evidence of the efforts made at RLCC to stop inmates from smoking, to punish inmates for doing so, and to enforce Louisiana law in this regard. Thus, Defendant has not been deliberately indifferent to any serious risk of harm to Dardar. Because Dardar has not offered any evidence to show otherwise, there are no genuine issues of material fact on the issue of deliberate indifference. Therefore, summary judgment is warranted.

I. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendant's Motion for Summary Judgment (ECF No. 26) be GRANTED and that Dardar's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this __23rd__ day of February 2023.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge